## WELLS *vs.* GATY, McGUNE & GLASBY.

The Court has no power to compel the plaintiff to submit to a nonsuit; he has a right to have the verdict of a jury upon the issues of fact.

ERROR to St. Louis Court of Common Pleas.

PRIMM, TAYLOR *and* LESLIE, *for Plaintiff in Error.*

The only question of importance presented by the record in the case, is the action of the court below in directing a nonsuit, when, from the evidence on trial, it appeared that the plaintiff's cause of action originated in a contract entered into by him and another.

The plaintiff seeks to recover, in common assumpsit, a sum of money received by defendants, in pursuance of a contract, to build a boat or part of a boat for him and one Wetmore, which contract was by the defendants abandoned, made null and void, or so neglected on their parts as to give plaintiff the right to rescind the same, either of which, as I conceive, presents the same question of law for the consideration of this Court.

The evidence shows, that the money paid the defendants on the contract was the individual money of the plaintiff, and the objection to his recovering it in this action is as ruled by the court below, that when defendants received it, it was received as the money of the plaintiff and Wetmore, and must, in law, be recovered back by a joint action.

The same reasoning that would support such a proposition would necessarily require a special action on the contract, either in covenant or assumpsit, according to its legal form. The contract being void, as to the right of the defendant to hold the money paid in pursuance of it, or, in other words, being no defence to a recovery, cannot, it would seem, govern as to who should sue, upon a point of non-joinder of parties plaintiff, without settling the law to be, that a special action on the original contract is the only legal remedy. This is contrary to all the decisions, and among many others, against the following: 2 Carr & Payne, 286; 4 Bing., 5; 12 Johns., 363, 274; 5 Johns. Reports, 85; 5 Mass. Reports, 199; 13 Mass., 139.

The nature of the action and the legal condition of the parties is changed from what they were under the original contract, and the law, and the reason of the law, says with clearness and simplicity to the defendant, you now hold the money independent of and contrary to the contract, and to the plaintiff's use, and he hath his plain action to recover it.

If plaintiff's co-contractor had actually paid a moiety of the money, he could, by separate action, recover it back.—6 Wend., 263.

SPALDING *and* TIFFANY, *for Defendants in Error.*

I. On the case as made, it was right to instruct the jury that the suit should have been brought in the name of both Wetmore and Welles.

1. If there are *too many* or *too few* plaintiffs, it is a ground of nonsuit on the general issue. (1 Chitty's Pleadings, 5–9; 1 Bos. & Pul., 75, in notes; 2 Johns. Cases, 382; 6 Mass. Rep., 460.) "The want of proper parties in actions on contract is an exception to the merits, and to be taken advantage of on demurrer, in bar, and on the general issue, but not by plea in abatement."

2. The written contract was with Welles and Wetmore, as *party of the second part,* and the agreements to pay were by *them* as *one party,* and the promise to build the boat was *to them* jointly as *one party;* any suit, therefore, for the violation of that contract must have been brought by both jointly.

3. The payments made, to wit, the cash payment of $1,000 made to the parties of the first and second part, and the second payment afterwards made, was in law a payment by the party of the *third part,* that is, by Welles & Wetmore, although, as between them, Welles may have raised the whole of the money out of his private resources. Suppose each had contributed a portion *of that* and the *subsequent payment,* would it have been the individual payment of each for his portion? It matters not how the receipt is written, whether in the name of one or both.

4. In bringing the suit now, to recover back the money paid, it is on the ground that the contract is rescinded; for if the contract were considered in force, the suit would have been upon *it;* and in suing on this contract, the action must have been in the name of Welles & Wetmore, joint covenantees.

5. If the contract be rescinded, an implied assumpsit is held by plaintiff to arise, to refund the money. But in whose favor does it arise? Does it arise in favor of the *party of the third part,* Welles & Wetmore, or does it arise in favor of Welles individually, for what he may have paid, and in favor of Wetmore, for what he may have paid?—and will the court enter into the state of accounts, between Welles & Wetmore, in this manner?

6. The money, when recovered, may not belong entirely to Welles; the proof is, that he was to advance money, and Wetmore contribute services. Suppose the contract rescinded by the fault of the defendants, is Welles to have back all the money advanced by him, and yet Wetmore to lose his services? And can Wetmore bring a suit individually, to recover for his services lost by rescinding the contract? On the contrary, are they not one party, (according as designated in the contract) and bound to sue and recover in their joint names, adjusting the amount of the recovery between themselves? They are *quasi* partners in this matter.

7. But the contract was not rescinded, and therefore Welles could not sue in this form of action; for, even admitting facts to have existed to authorize the contract to be rescinded, yet it has not, *in fact, been rescinded.* The *defendants* have not claimed to have it rescinded. Wetmore has not assented to have its being rescinded, and it is not in the power of *Welles* alone to rescind it; for, admitting (what is the law) that, in certain cases, *one party* can rescind a contract

for the mal-conduct of the other, yet a portion of one party cannot rescind it. If the party of the third part might have rescinded it, in the present case, yet that party has not acted.—Chitty on Contracts, 275–7.

8. The party of the third part (Welles & Wetmore) were guilty of the first default, in failing to pay the instalment at the time, and this caused the delay in the work. It was not in their power to rescind the contract, even if they attempted to do so. (Chitty on Contracts, 275.) " The right to rescind a contract vests only in the party who has been guilty of no default." (*Ibid.*, 275.) "The right to rescind must be exercised in a reasonable time, and it can be exercised only when the parties can be put *in statu quo.*" (Long on Sales, 238–42, &c.) Here Welles & Wetmore never rescinded the contract, never gave any notice that they intended to do so, but lay by and permitted the defendants to complete the work, and were themselves *the first to break the contract!* (3 Starkie on Ev., 1770.) That if party does not rescind contract, as soon as he is made acquainted with the reason and his right to do so, he is deprived of the privilege. In the case of defect in goods sold, he must do it after sufficient time allowed for examination and trial. (Long on Sales, 240.)

9. 7 Greenleaf, 70, Brinley *vs.* Tibbets : If party having right to rescind contract, because not performed in time, does any act amounting to an admission of its existence, he cannot afterwards elect to treat it as void. In the present case, the boat was to be finished by the 1st of June, and it was *after* that day when Welles paid the second instalment on the contract to the Dry Dock Company, which had been due ever since the 1st of March; thus acting on the contract after he knew the time was out for its fulfilment, and that the delay had been occasioned by his own breach of it.

10. To permit one of the two (either Welles or Wetmore) to sue alone, is subjecting persons in the situation of the defendants to be harassed by a multiplicity of suits. Suppose the company that engaged the building of the boat had consisted of ten instead of two persons, each, on rescinding the contract, would have a right to bring a suit in his own name for any amount he might have advanced for the common object.

11. To permit such suits, must lead to investigations not proper or competent for a court of law. How, in such a case, can a court of law ascertain how much each ought to recover ? An account must be taken, and it must be ascertained how much each is entitled to, as between himself and his co-contractors he is entitled to receive; and in ascertaining this, an investigation must be had as to what each has contributed in money or services, &c., and, in fact, all must be done that is necessary in closing up a copartnership.

12. Whether the instruction given was right or not, can make no difference, as the plaintiff below was not injured thereby; inasmuch as the covenants in the instrument between the parties were dependent covenants, and the plaintiff, on his own showing, made out no case, and was not entitled to recover.—8 Mo. Rep., 487, Freeland *vs.* Administrator of Thomas.

II. The covenants being dependent, and the plaintiff having proved that he failed to keep *his*, it follows, of course, that he had no cause of action on account

*Wells vs. Gaty, McCune & Glasby.* •

of the failure of the defendants to keep *theirs*, which failure was caused by plaintiff's own previous failure to perform a pre-requisite.

TOMPKINS, J., *delivered the opinion of the Court.*

This was an action of assumpsit, brought by Welles against Gaty, McCune & Glasby, on the common counts. The pleas were non-assumpsit, payment and set-off, with other special pleas not material to be noticed. The case was tried before a jury at the February term in the year 1844; judgment was given for the defendants, and, to reverse it, Welles prosecutes this writ of error.

The bill of exceptions shows that the plaintiff gave in evidence an instrument of writing to the following effect: "This article of agreement, made and concluded, at the city of St. Louis, the 4th day of February, in the year 1842, by and between Samuel Gaty, John S. McCune and Alban Glasby, of the first part; and William Thomas, Robert Walsh, John Daggett and John D. Coalter, doing business under the name of "The Dry-Dock Company," of the second part; and George Welles and Alphonso Wetmore, of the third part, witnesseth: that the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned, do covenant and agree to and with the said party of the third part to furnish an engine of the following dimensions, &c. The said party of the second part, for and in consideration of the covenants hereinafter mentioned, do covenant and agree, to and with the said party of the third part, to build and furnish a twin ferry-boat, 90 feet long on deck, 13 feet beam, &c. And the said first and second parties do jointly agree with the said third party, that they will furnish said ferry-boat and engine complete, &c., by or during the month of May next. In consideration of which, the said party of the third part do covenant and agree to and with the party of the first part, to pay them thirty-two hundred dollars, as follows, viz.: four hundred and twenty-seven dollars, on signing this contract; four hundred and twenty-seven dollars on the first day of March next; eight hundred and fifty-three dollars on the first day of May next, or on delivery; and fourteen hundred and ninety-three dollars in four months after, &c. And the said party of the third part do covenant and agree, with the said party of the second part, to pay four thousand three hundred dollars, as follows, viz.: five hundred and seventy-three on the signing of this contract, five hundred and seventy-three on the first of March next, &c.

Evidence was introduced to prove the execution of the contract, and to show that the first payment was made by Wetmore out of money furnished him by Welles; and that Welles also paid the second instalment to the defendants; and that Wetmore had an interest in the boat, and was to advance no money, but to render services to Welles, in consideration that Welles advanced money. Other testimony was given, which it is not material here to notice.

After the testimony was all detailed in the bill of exceptions, it is added, "And thereupon the court directed a nonsuit to be entered in the case, upon the ground that the said Wetmore had not been joined as a party in the suit. Exceptions were taken to this decision of the court. The plaintiff moved to set aside the

*Wells* vs. *Gaty, McCune & Glasby.*

judgment of nonsuit; the motion being overruled, the plaintiff excepted to that decision also.

Where a plaintiff is demanded, and doth not appear, he is said to be nonsuit; and this usually happens where, upon the trial, and before his cause is finally submitted to the jury, the plaintiff discovers some error or defects in the proceedings, or is unable to prove a material point for want of necessary witnesses, &c., and thereupon being demanded, (as he must be) his default is recorded, &c. —5 Bacon, 140, title, "Nonsuit," letter A.

The court cannot compel a plaintiff to submit to a nonsuit; they may advise it, and direct him to be called, but if he refuse to suffer a nonsuit, the court can no otherwise protest and enforce their opinion but by awarding a new trial, if the jury find against their direction.—1 Washington, Ross *vs.* Gill; *Id.*, 138; Thornton *vs.* Jett, 2 Bin., 234; Gerard *vs.* Gettig, *Id.*, 248; Widdefield *vs.* Widdefield, cited in Bacon, at the aforesaid title, in a note.

Again, the plaintiff, in no case, is compellable to be nonsuited; and therefore, if he insist upon the matter being left to the jury, they must give in their verdict. (Tidd's Practice, 796.) The authorities cited, 3 Term Rep., 662; 1 Burrow, 338; Cowper, 483, and 2 Term Rep., 281.

The 31st section of our act to regulate practice in the Supreme Court directs, that no exception shall be taken in an appeal or writ of error, to any proceedings in the Circuit Court, except such as shall have been expressly decided by such court. No point of law has been decided in this case; but the judge of the court orders a nonsuit to be entered against the plaintiff, assuming, as we must suppose, the office of a jury as well as of a judge, whose duty it is only to expound the law arising on such facts as the jury may find from the evidence given in the cause. It might have been true, that if the law arising on the evidence given in the cause had been explained to the jury, they would have found for the defendants; but it was the part of the court to expound the law to the jury, and to have left them to say whether, on the evidence given in the cause, and the law as delivered to them by the court, the plaintiff could recover.

It was said in the argument, that the plaintiff took a nonsuit on account of the opinion of the court that Welles could not sue alone, but should have joined Wetmore as co-plaintiff. It appears on record, that the plaintiff came into court and said, he would not further prosecute his suit, but suffered the same to be discontinued; but it appearing, also, from the bill of exceptions, that the court ordered a nonsuit to be entered against him, and that he excepted to the action of the court in that matter, the entry that he suffered his suit to be discontinued must be regarded as compulsory, and made under the influence and in consequence of that order of the court. It is much easier to the court to direct a nonsuit to be entered against a plaintiff, than to explain the law to the jury, so as to enable them to find, under the directions of the court, whether, according to the evidence given, the plaintiff or the defendant ought to prevail. But the practice of directing the entry of a nonsuit, in cases like the present, leaves the law of the case all open for this Court to decide, and renders it impossible to comply with the requisitions of the 31st section, above cited.

The judgment of the court is reversed, and the cause remanded.